Wright, J.
I. Plaintiffs in error, Kingsland, Hook &' Co., plaintiffs below, took this note, with Pryor’s accommodation indorsement, and gave for it an extension of four months, surrendered up collaterals which they held, thus receiving the new note in absolute payment. They are therefore bona fide holders- of paper transferred to them-before maturity.
II. Jones, of Jones & Mays, obtained this accommodation indorsement of Pryor by fraud. Had Jones informed Pryor, as he should have informed a confiding friend of whom he was asking pecuniary favors, of the condition of the firm; had he informed him that all the real estate had. been deeded away to pay or secure debts; that all the-bank stock had gone in the same direction; that creditors-were praying for security upon old obligations; that lawyers were employed to collect or secure, Pryor, if a man of ordinary intelligence, would not have indorsed for so-' large an amount, unless, indeed, there were other claims-upon him to render assistance than those appearing in the case. Indeed, Pryor says he would not have gone on the paper if he “ had had any idea things were in the shape-they were.” But not content with suppressio veri, in the-nature of demónstrate falsi, Jones gives as a-reason for-asking the favor, that he wants to get money out of theBarnesville bank to buy wheat. This was untruth in the-fullest sense of the term. No such purpose was ever, at anytime, entertained. Jones wanted the note to pay the old debt of Kingsland, Hook & Co., who, through Collins, were urgent. This was his sole object, and the indorsement was-at once thus applied.
HI. Could we in any way connect plaintiffs, either directly, or through their attorney, Collins, with this fraud of Jones, we should long hesitate before reversing the-judgment below. But can this be done ? As to plaintiffs themselves, they did not know Pryor, except through Jones.. They never spoke to him, never saw him; had no communication with him.' Jones offered to give his name, or that *23 of others, as security. Kingsland, Hook & Co., who were merchants in Baltimore, inquired, and found that Pryor was responsible, and informed Jones they would take him. Further, Kingsland, Hook & Co. did not suggest to Jones • anything of the course he took to procure the indorsement. They knew nothing of this whatsoever. Directly, therefore, they are in no way connected with, or responsible for, Jones’ conduct. Are they, then, responsible through their attorney, Collins, upon the ground that the principalis responsible for the acts of his agent ?
Had Jones and Collins put their heads together in this matter; had Jones proposed and Collins assented, or had Collins proposed and Jones assented, that Jones should go to Prior, and, concealing his financial distress, tell the story about the wheat, and so get the desired note, we would not hesitate to hold Kingsland, Hook & Co. responsible for the acts of their attorney, with all the consequences, even to invalidating the note. Burks v. Wonterline, 6 Bush. 20 ; Story Eq. Jur. § 204; Rees v. Barrington, 2 White & Tudor L. C. in Eq. 1867; Owen v. Homan, 8 Mac. & G. 378.
But what part did Collins take in the matter ? As to getting the original note — the one in pencil — Collins had no communication with Pryor, did not see him, did not speak to hinj on the subject. Nor did he advise Jones as to the course he should pursue. He did not intimate to Jones to conceal his condition from Pryor, nor did he have any part or parcel in the wheat story; the whole transaction was original with Jones, and no one is responsible for it but him. It is true that when plaintiffs wanted a note in ink substituted for the one in pencil, Collins writes a letter to Jones, inclosing a new note, asking him to get Pryor’s indorsement, and to send the letter to Pryor, that he may understand the old note will be returned. This appears to be all the intercourse Collins had with Pryor throughout the whole business, and we fail to see any evidence whatever to implicate Collins in the fraud that Jones perpetrated.
*24 The court, therefore, properly charged: “ The defense of fraud and collusion, in procuring the signature of Pryor, fraud in the improper use of the security, is set up, and if these defenses are made out, the plaintiffs, if they shall by testimony be so connected with these frauds as to make them parties thereto, or to charge them with the knowledge ■of the same, can not recover.”
This charge, for the purposes of the case, was correct, and there is no evidence in the record to warrant the conclusion that plaintiffs were connected with the fraud in question, or were charged with knowledge thereof. Defendant alleges, in his answer : “ The defendant further says that the said plaintiffs were in collusion with said Jones & Mays, in obtaining said indorsement, and the note came Into plaintiffs’ possession with notice of the manner in which it was obtained.”
It is precisely this allegation which fails of proof.
It is beyond question that Collins, as attorney of the Barnesville bank, knew of J ones’ condition ; knew he had transferred his real estate and bank stock, though he says he still thought the firm' solvent. He had also been securing other claims. It seems to be insisted that, because Collins had obtained this knowledge, as attorney of the bank, he was in some way bound to communicate it to Pryor. We can not so believe. Collins was^employed to get the security from Jones; he had dealings with Jones alone, and it was no part of his business to give any information whatever to Pryor, at least until he was asked for it. Magee v. Mem. Life Ins. Co., 92 U. S. 93; Hamilton v. Watson, 12 Cl. & F. 109; N. B. Ins. Co. v. Lloyd, 10 Exch. 523; Withers v. Labouchere, 3 De Gex & J. 609.
An attorney employed to secure a claim is not bound to make public such information, in his possession, as will prevent him from accomplishing the object of his employment.
A portion of the charge is occupied in stating to the jury that the knowledge obtained by Collins as attorney *25 ■of the bank was not a privileged communication, and it was not a breach of professional confidence in him to impart it to plaintiffs. We do not see what this has to do with the ease. The question, and the sole question, as we conceive it to be, as regards Collins, is, did he directly, or through Jones, impose upon. Pry or? Whether he communicated his information to plaintiffs or not, makes no sort of difference, and unless he was under some obligation to impart it to Pryor, the not doing so is nota circumstance to impeach the transaction. The charge, therefore, in this respect, was misleading. Nor can it be said that Jones, in •getting the indorsement, acted as agent for plaintiff, so as to make them responsible for the fraud he undoubtedly •committed. Farmers’, etc., Bank v. Lucas, 26 Ohio St. 385. Jones was acting for himself, and merely did what many before him have done, and doubtless more after him will do. With the terror of impending failure before him, he imposed upon unwary friendship, and involved others in a ■desperate attempt to escape the inevitable.
The views expressed dispose of certain questions of evidence.
Questions A to K, inclusive, in Collins’ cross-examination, were incompetent. The purpose of these questions is to show the condition of the firm, and the transfer of its property, as being facts at the time known to Collins. It is no matter of consequence whether he knew them or not, unless it was his business to inform Pryor of them, a duty which, as we have said, it was not incumbent upon him to perform.
Two letters were offered in evidence, by Pryor, as follows :
“ Burr’s Mills, October 9, 1869.
“ Mr. Watson Pryor — Dear Sir: Inclosed please find our note, payable to your order, for indorsement, to take the place of the one you indorsed for us, written with a pencil. 'The note written with pencil is just as valid as written with pen and ink, but some of our directors are not satisfied, and I told them I would get one with ink, and the one you *26 signed will be destroyed. By writing your name across the back, will much oblige undersigned; for the accommodation of the other directors. G-. M. Jones.”
. “P. S. — You will find the letter inclosed of director Collins. G-. M. Jones.”
“Babnesville, Ohio, September, 11,1869.
“ G-. M. Jones, Esq. — Dear Sir : Please sign this note, firm name, and get Pryors indorsement thereon, and I will return you the note written with pencil. Send this letter to Pryor, so he will understand the other note is to be returned. Sincerely, J. II. Collins.”
These letters were objected to by plaintiff, and should have-been ruled out. They are incompetent on two grounds:
1. The original indorsement was made in pencil. The rights of the parties were fixed at that time, and the circumstances subsequently occurring could not vary those-rights.
2. It is very apparent that Jones, by his letter, wanted Pryor to understand that the note was in the hands of the-bank, in accordance with the wheat story, that suspicion might not be awakened. This was a deception; but how are plaintiffs connected with or responsible for-it ? Collins, so far as the evidence shows, did not know of this note, or its contents. He simply wrote to Jones to get the new-note, and J ones took his own course.
The bill of exceptions states that when defendants’ counsel offered the Jones letter, he stated that plaintiffs would be connected with it. The connection, however, failed.

Judgment reversed.